**Welton L. ALLEN et al., Appellees,**

v.

**FARMERS UNION CO–OPERATIVE ROYALTY COMPANY, a corporation, et al., Appellees,**

**Alice Mae Baines and Jane Louise Bowman, Appellants.**

**Welton L. ALLEN et al., Appellees,**

v.

**FARMERS UNION CO–OPERATIVE ROYALTY COMPANY, a corporation, et al., Appellees,**

**Flag-Redfern Oil Company, a corporation, Appellant.**

**Welton L. ALLEN et al., Appellees,**

v.

**FARMERS UNION CO–OPERATIVE ROYALTY COMPANY, a corporation, et al., Appellants.**

Nos. 46493, 46517 and 46526.

Supreme Court of Oklahoma.

July 8, 1975.

Robert B. Harbison, Altus, for appellees; Welton L. Allen, Frances D. Posey, Emily J. Stilwell and Eldean Allen, Harbison & Weber, Altus, of counsel.

Granville Tomerlin, Oklahoma City, for appellant; Farmers Union Co-Operative Royalty Co., a corporation, Tomerlin, High & Patton, Oklahoma City, of counsel.

Turpin, Smith, Dyer, Harman & Osborn, Midland, Tex., McBee & Benson, Frederick, Pinkerton & Pinkerton, Tulsa, for appellant; Flag-Redfern Oil Co., a corporation.

Tal Oden, Oden & Oden, Altus, for appellants; Alice Mae Baines and Jane Louise Bowman.

C. O. Hunt, Jr., Oklahoma City, for amicus curiae, State of Oklahoma on Relation of the Commissioners of the Land Office.

DAVISON, Justice:

The above styled and numbered cases are separate appeals from a single judgment rendered in the trial court. The multiplicity of propositions of error, counter-charges, and answers thereto render it nec-

essary to dispose of the same in and by this decision.

The subject appeals (3) by defendants, Alice Mae Baines and Jane Louise Bowman (Baines-Bowman), and Flag-Redfern Oil Company, successor to Flag Oil Company (Flag), and Farmers Union Co-operative Royalty Company (Farmers), collectively referred to herein as "Appellants," are prosecuted from a judgment rendered in favor of plaintiffs, Welton L. Allen, Frances D. Posey, Emily J. Stilwell, and Eldean Allen (Allen Heirs), quieting title to certain mineral interests in Allen Heirs.

The Allen Heirs filed suit in the lower court on July 12, 1972, against Appellants and Eagle-Picher Company to quiet their title "in and to all copper, gold, silver, lead or other types of metallic ores or metallic metals lying under or that may be produced from" the East Half of the Northwest Quarter, and the West Half of the Northeast Quarter, of Section 21, Township 1 South of Range 22 West of the I. M., in Jackson County, Oklahoma. Eagle-Picher was a party defendant because it held an alleged valid mining lease in the property. It was made a party for the alleged purpose of informing it of the quiet title proceeding, and no relief was sought against it.

There is no dispute as to the manner in which the parties acquired their interests in the property.

On October 18, 1921, one C. G. Spears was the owner of the fee title to the above described real estate. On that date, by warranty deed recorded October 25, 1921, in Book 32, Page 101, Spears, joined by his wife, conveyed the property to The First National Bank of Olustee, with the following reservation: "It is understood that the Grantors hereto reserve one-half interest in and to all oil, gas & mineral rights of above described land, * * ." This reserved interest, after being reduced to an undivided one-fourth interest by the following described conveyance, ultimately descended to and became vested in Baines-Bowman.

On May 31, 1929, by "Mineral Deed Special", recorded June 15, 1929, in Book 11, page 459, Spears conveyed to Farmers "an undivided ¼ interest in and to all of the oil, gas and other minerals in and under, and that may be produced from" the above described real estate, "together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals and removing the same therefrom." The instrument also provided for payment to Farmers of rentals and royalties from any existing or future oil and gas lease, "it owning ¼ of all oil, gas and other minerals in and under said lands, together with ¼ interest in all future events."

On August 25, 1930, Farmers executed a mineral conveyance, in favor of Flag Oil Company (of which Flag is successor) which was duly recorded March 31, 1938. In this instrument Farmers described the conveyance from Spears to it by date, and book and page of recording, and reciting that *Farmers,* under the conveyance from Spears, "was conveyed an undivided ¼ interest in and to oil, gas and other minerals and mineral royalty in and under said land *to the extent set forth in said conveyance.*" (Emphasis supplied). The instrument then stated Farmers was conveying to Flag Oil Company "an undivided ⅟₁₆ interest in and to the oil, gas, coal, iron and other minerals and mineral royalty" in and under said land.

The title acquired by the Bank of Olustee from Spears, supra (which constituted the fee less Spears' reservation of one-half of the oil, gas and mineral rights) by mesne conveyances became vested in one Shumaker, who on April 5, 1943, by warranty deed duly recorded May 7, 1943, conveyed the property to E. L. Allen, with a provision in the habendum clause stating, "Except one half interest in and to all oil, gas and mineral rights reserved in warranty deed Dated Oct., 18th 1921 recorded in Book 32, Page 101." Thereafter, on March 16, 1946, Shumaker, by Quit Claim Deed

duly recorded April 4, 1946, again conveyed the property to E. L. Allen, for the stated purpose of conveying all of grantor's "Mineral rights * * ," as was intended by the prior warranty deed. The title of Allen descended to and became vested in the plaintiffs Allen Heirs.

At the trial of the cause the above instruments were introduced in evidence. The trial court also permitted Flag, as an offer of proof, to introduce testimony and evidence designed to show that, at the time Spears conveyed the mineral interest to Farmers and during their later relationship and dealings concerning the same, Spears and Farmers thought and believed they owned a mineral interest consisting of more than an interest in the oil, gas, and constituents thereof. This evidence was offered, as we understand it, to show the intentions of the parties in connection with the reservation and conveyances. The court permitted this evidence only as an offer of proof, refused to consider it, held the instruments were clear and unambiguous, and rendered judgment against the Appellants quieting title in the Allen Heirs to all the metallic minerals specifically and generally described above.

We are concerned here only with the proposition of whether one, several, or all of the Appellants, own any interest in the copper, gold, silver, lead or other types of metallic ores or metallic metals, lying under or that may be produced from the above described real estate. We are not concerned with what interest all of the parties, as between themselves, own in the oil, gas and constituents thereof.

It should also be understood that the situation presents two distinct chains of title. One chain of title stems from Spears' reservation of one-half of "all oil, gas & mineral rights" in the warranty deed to First National Bank of Olustee, one portion of which severed minerals descended to Baines-Bowman, and the other portion being conveyed to Farmers, and then in part to Flag (supra). The other chain of title, covering the fee less the reservation of Spears, stems from First National Bank of Olustee and consists of mesne conveyances to one E. L. Allen, from whom it descended to the Allen Heirs (supra).

The parties have filed extensive briefs herein. A considerable part of Appellants' complaints regarding the lower court's judgment are based on criticism of our decision in Panhandle Cooperative Royalty Company v. Cunningham, Okl., 495 P.2d 108. In fact, our conclusions in the Panhandle case are directly or indirectly contrary to the Appellants' contentions in this appeal.

The Appellants Baines-Bowman contend the Spears reservation ("all oil, gas & mineral rights") is unambiguous, is distinguishable from the term "all oil, gas and other minerals," and clearly means *all minerals* of every kind.

In support of this statement they cite Barker v. Campbell-Ratcliff Land Co., 64 Okl. 249, 167 P. 468. In that case the grantor inserted a reservation in his favor in the warranty deed conveying the property stating " * * reserve all mineral rights upon the * * " lands. The issue was whether an oil and gas lessee of the grantor could develop the land for oil and gas. We held the words "all mineral rights" did cover oil and gas.

We point out that regardless of what the term "mineral rights" covers when standing alone, the problem is to determine the meaning thereof when used in the phrase "all oil, gas & mineral rights." We conclude that the solution to this problem is to be found in the same manner as was used in determining the meaning of "all oil, gas and other minerals." In the latter situation we used the rule of ejusdem generis. In Cronkhite v. Falkenstein, Okl., 352 P.2d 396, 399, we quoted the rule as follows:

"Under the rule of ejusdem generis, where a party or author in a contract or conveyance makes use first of terms each evidently confined and limited to a particular class or species of things, and then, after such specific enumera-

tion, subjoins a term of very extensive signification, this term, however general and comprehensive in its possible import, yet, when thus used, embraces things only ejusdem generis, i. e., of the same kind or species, with those comprehended by the preceding limited and confined terms."

It is our opinion that the Spears' reservation, "all oil, gas & mineral rights" has essentially the same meaning as "all oil, gas and other minerals" as set forth in the Panhandle case (495 P.2d 108, 113), i. e., oil, gas and other minerals produced as a component or constituent thereof, whether hydrocarbon or nonhydrocarbon, and does not convey any other mineral or the right to produce any other mineral including copper, silver, gold or any other types of metallic ores or metallic minerals.

Under this definition of the Spears' reservation, Baines-Bowman have no interest in the metallic ores or minerals.

This brings us to the mineral conveyance from Spears to Farmers, supra, in which the granting clause conveyed to Farmers an interest in the "oil, gas and other minerals," with subsequent provisions therein relative to Farmers participating in royalty and rentals from any existing or future oil and gas lease. As a matter of fact, in view of our holding above, Spears had no interest in the metallic ores or minerals, and consequently could not convey an interest in these minerals to Farmers. Furthermore, we held in the Panhandle case, supra (495 P.2d 108, 111 and 113) that a deed granting the same mineral interest ("oil, gas and other minerals") with other subsequent provisions almost identical to that in the present deed, was not ambiguous and conveyed no metallic ores or minerals. Consequently, no evidence of an interpretive nature to ascertain the intention of the parties could properly be introduced.

This leaves the mineral conveyance from Farmers to Flag in which (supra) Farmers conveyed to Flag an interest in the "oil, gas, coal, iron and other minerals." Again, Farmers could not convey to Flag an interest in the metallic ores or minerals, because (1) Farmers simply owned no interest in these minerals, and (2) the conveyance expressly (by date and book and page of recording) describes the mineral deed by which Farmers acquired its mineral interest, "to the extent set forth in said conveyance," which we have held, supra, did not vest in Farmers any interest in the metallic ores or minerals.

The Appellants Farmers and Flag urge we should overrule our decision in the Panhandle case, supra, at least (we assume) to the extent that we hold the term "oil, gas and other minerals" means oil and gas, and the components and constituents thereof, as therein set forth. The arguments and authorities presented in support of this proposition were presented and considered by this court in connection with the preparation and adoption of the Panhandle decision. We find no valid reason for overruling that decision.

Flag also contends it has marketable title to all minerals, including hard minerals, under the Marketable Record Title Act, 16 O.S.1971, Secs. 71–81.

The factual basis for this contention is (1) the mineral conveyance from Farmers to Flag, supra, dated August 25, 1930, recorded March 31, 1938, purporting to convey to Flag an "undivided ⅟₁₆ interest in and to the oil, gas, coal, iron and other minerals and mineral royalty * * ," (2) that thirty years, after such recording, elapsed March 31, 1968, (3) that Sec. 7, of S.B.No. 559, Chapter 92, Session Laws 1970, amending the Marketable Record Title Act in pertinent part extended the effective date thereof, where the thirty-year period had expired, to July 1, 1972, and (4) the instant action was filed July 12, 1972.

Title 16, Sec. 71 of the Act, provides in part as follows:

"Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for thirty years or more,

shall be deemed to have a marketable record title to such interest as defined in Section 78 of this title, *subject only to the matters stated in Section 72 of this title*. A person shall be deemed to have such an unbroken chain of title when the official public records disclose a conveyance or other title transaction, or record not less than thirty years at the time the marketability is to be determined, which said conveyance or other title transaction purports to create such interest, either in

(a) the person claiming such interest, * * * * *with nothing appearing of record, in either case, purporting to divest such claimant of such purported interest*." (Emphasis supplied)

Section 74 of the Act provides that any person claiming an interest in the land may preserve and keep effective such interest by filing for record during the thirty-year period a notice, as therein required, setting forth the notice of the claim.

There are several exceptions in the Act which are fatal to Flag's contention.

Section 72 of the Act states in pertinent part that, "Such marketable record title shall be subject to: (a) All interests and defects which are inherent in the muniments of which such chain of record title is formed; * * *."

In the present instance the "muniment" of title and "chain" of record title of Flag is the mineral conveyance, supra, whereby Farmers purports to convey to Flag more than just an interest in the oil, gas and other minerals. As heretofore stated this instrument contained language that effectively reflected that Farmers only owned an interest in the "oil, gas and other minerals," and consequently could only convey to Flag an interest in such minerals as defined in the Panhandle case, supra.

It is our conclusion that this circumstance, as stated in Sec. 72, supra, constitutes a defect "inherent in the muniments of" Flag's record chain of title by

which it claims an interest in minerals other than "oil, gas and other minerals."

Another exception in the Act that is fatal to Flag's contention is also in Sec. 72 of the Act. The pertinent part thereof states, "such marketable record title shall be subject to: * * (d) Any interest relating to a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title of record is started: * * ."

Section 78(f) of the Act defines "Title Transaction" as meaning, "any transaction affecting title to any interest in land, including title by will or descent, * * warranty deed, quitclaim deed, * * * ."

In delineating the chain of title of the Allen Heirs in the first part hereof we described two deeds that fall within the above exception and definition.

The first of these deeds is the Warranty Deed from (D. H.) Shumaker to E. L. Allen, dated April 5, 1943, conveying the subject real estate, with a provision in the habendum part thereof as "Except one half interest in and to all oil, gas and mineral rights reserved in warranty deed dated Oct. 18, 1921 recorded in Book 32, Page 101." This exception describes the reservation of Spears made, supra, and is the basis of Appellants' mineral interests.

The second deed is the Quit Claim Deed from Shumaker to E. L. Allen, dated March 16, 1946, duly recorded April 4, 1946, conveying the subject real estate for the purpose of absolutely vesting in Allen all minerals owned by Shumaker.

In addition to the above, there is in evidence the Final Decree in the Probate of the Will of E. L. Allen, dated and filed of record April 29, 1963, describing the subject real estate.

It is our interpretation of the Act that the recordation of a "Title Transaction" (Sec. 72) as defined in Sec. 78(f) is tantamount or equivalent to the filing of a notice of claim during the thirty-year period as specified in Sec. 74, supra.

All of these instruments are dated and filed of record subsequent to the recording of Flag's mineral conveyance and prior to the expiration of the thirty years set forth in the Marketable Record Title Act.

It is our conclusion that the judgment of the lower court quieting title in the Allen Heirs was correct and valid.

Affirmed.

All Justices concur.