2005 OK CIV APP 111

ROCKET OIL AND GAS COMPANY, Stanley H. Singer Revocable Trust, Fleischaker Exploration Company, L.L.C., Teton Properties, L.L.C., Three M Oil Company, W2 Limited, and John Hemmack, Plaintiffs/Appellees,

v.

Elias B. DONABAR, Marcus A. Rhodes; R. Van Tress; Saul A. Yeger, Trustee in Bankruptcy in the Matter of the Estate of United Royalty Company, and their spouses, which spouses' names are unknown to Plaintiffs, and if they be living and if they or any of them be dead, then their respective successors, heirs, executors, administrators, devisees, trustees and assigns, immediate and remote, of such deceased persons, and the unknown successors, heirs, executors, administrators, devisees, trustees and assigns, immediate and remote of Abedis B. Donibar a/k/a Abedis B. Donabed, deceased, Mariam Donabed, deceased, Albert Brown, Pushmataha County Clerk, and The State of Oklahoma, ex rel. Oklahoma Tax Commission, Defendants,

and

Clark A. Tomassian, individually and as Trustee of the Martin V. Tomassian Family Trust, Defendant/Third–Party Plaintiff Appellant,

and

GHK/Potato Hills Limited Partnership, and Glebe Royalty, L.L.C., Intervenors/Third–Party Plaintiffs,

v.

William J. Dunn and his spouse whose name is unknown to Plaintiffs, R.W. Skipper a/k/a R.W. Shipper and his wife, Estelle Skipper a/k/a Estelle Shipper, Stanley Singer a/k/a Stanley H. Singer, R.F. Garland, John Fernow a/k/a John Farnow, G.M. O'Donnell and his spouse whose name is unknown and heirs if

they be living but if dead then the heirs, devisees, assignees and successors, Darrell V. McClanahan, the Unknown heirs, administrators, assigns and devisees of Liberty Royalties Corp. a/k/a Liberty Royalty Corp., Hycook Corporation, Harris County Charity Foundation, Fleischaker Family Partnership And Fleischaker Family L.L.C. a/k/a Fleischaker Family L.C. and Fleischaker Mineral Company, and United Royalty Company Express Trust, Third–Party Defendants.

No. 99,644.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 28, 2005.

Robert S. Settles, Antlers, OK, for Plaintiffs/Appellees.

Jacqueline Jo Perrin, Stamper & Perrin, PLLC, Antlers, OK, for Defendant/Third–Party Plaintiff/Appellant.

## OPINION

ADAMS, Presiding Judge:

¶ 1 Clark A. Tomassian, individually and as Trustee of the Martin V. Tomassian Family Trust (Defendant), appeals a judgment quieting title in favor of Rocket Oil and Gas Company, Stanley H. Singer Revocable Trust, Fleischaker Exploration Company L.L.C., Teton Properties L.L.C., Three M Oil Company, W2 Limited, and John Hemmack (collectively, Plaintiffs) to the minerals underlying the SE/4 of the SW/4 of Section 9, Township 2 North, Range 20 East, Pushmataha County (the subject property). The trial court's judgment is based on its findings that Plaintiffs had an unbroken chain of title to the minerals in excess of 40 years under the Marketable Record Title Act, 16 O.S.2001 § 71, *et seq.* (the Act), which extinguished Defendant's mineral interest in the subject property, and that Defendant's claim of adverse possession failed due to a lack of production and/or taking of any minerals. Based on different reasons, we agree with the result reached by trial court and affirm the judgment.

### Standard of Review

¶ 2 An action to quiet title to determine ownership of mineral interests is an

equitable proceeding. *Voiles v. Santa Fe Minerals, Inc.,* 1996 OK 13, 911 P.2d 1205. In such cases, this Court will examine the record and weigh the evidence but will not disturb the trial court's judgment unless it is against the clear weight of the evidence or contrary to law or established principles of equity. *Wetsel v. Johnson,* 1970 OK 69, 468 P.2d 479.

### Facts

¶ 3 The relevant facts shown by the record are undisputed. The subject property in fee simple was originally conveyed by an unallotted land deed from the Choctaw and Chickasaw Nations to Marcus A. Rhodes filed on May 25, 1922, who thereafter conveyed the same to R. Van Tress. Van Tress and his spouse conveyed the subject property in fee simple to G.M. O'Donnell by a warranty deed which was filed of record on August 11, 1924. Both chains of title come from this conveyance. We describe Plaintiffs' chain first.

¶ 4 By a warranty deed filed of record on September 16, 1926, O'Donnell conveyed the subject property in fee simple to W.R. and Estelle Skipper. The Skippers conveyed the entire mineral estate to R.F. Garland by a deed filed December 31, 1926. Garland conveyed all of his interest to Liberty Royalties Corporation (Liberty) by a mineral deed filed February 9, 1927. After Liberty conveyed the minerals by deed filed November 18, 1929 to its president, John Fernow, followed by his conveyance to The United Royalty Company, the latter company filed bankruptcy, and pursuant to a federal court order, the entire mineral estate was assigned by the bankruptcy trustee to Liberty by a mineral deed filed December 9, 1946. Three years later, Liberty executed a mineral deed that was filed of record on March 2, 1949, conveying the entire mineral interest to Plaintiff Rocket Oil and Gas Company. It is through this chain of record title that Plaintiffs obtained their mineral interests and claim, under the Act, that they have an unbroken chain of title in excess of 30 years.

¶ 5 Defendant's chain of title begins with a warranty deed, filed of record on June 20, 1922, in which G.M. O'Donnell conveyed the fee simple estate to Avedis Donabed [1] *two years before* O'Donnell became record owner of the same. It is undisputed that Donabed, a resident of Massachusetts, died intestate on September 30, 1966, never having lived on the subject property. More importantly to this appeal, after 1922, there are no instruments filed of record in Defendant's chain of title until a warranty deed filed on August 30, 1971 (the 1971 warranty deed), in which Donabed's brother, Elias B. Donabar,[2] conveyed the subject property to Defendant's father, Martin V. Tomassian, also a Massachusetts resident. Mr. Tomassian established a trust to which the subject property was conveyed, from which property taxes were paid to the Pushmataha County Treasurer and for which Defendant is the Trustee.

¶ 6 On September 10, 2001, Plaintiffs filed their quiet title petition against numerous defendants, including Defendant's father.[3] The Oklahoma Tax Commission answered, stating it had no estate tax liens against the subject property and requesting the trial court to limit its judgment to estate taxes because no tax warrants were named. GHK/Potato Hills Limited Partnership and Glebe Royalty, L.L.C., as owners of oil and gas leases on the subject property, filed a petition to allow intervention, in which they stated Plaintiffs had no objection to such. These Intervenors and Defendant filed a combined cross-petition and cross-claim to

---

1. According to the 1922 warranty deed, O'Donnell conveyed to "Avedis" Donabed, not "Abedis" Donabed as alleged in the petition and amended petition.

2. According to the 1971 warranty deed, Elias B. Donabed claimed title through the Estate of "Mariam Donabed," probated in Massachusetts and the Estate of "Avedis B. Donabar," also probated in Massachusetts. To support his trial court arguments, Defendant presented several documents from the latter probate, including the

petition, explaining that "Miriam Donabed" was the mother of Avedis B. Donabed, and the probate inventory, describing the subject property as "Forty acres of undeveloped land in Antlers, Pushmataha County, Oklahoma" with an appraisal value of $2,000.

3. Plaintiffs filed an amendment to their petition to also include Defendant's father in his capacity of Trustee.

join several third-party defendants and to include an additional tract of land in the quiet title action.[4]

¶ 7 Defendant and Intervenors moved for summary judgment, arguing, *inter alia,* that by application of the after-acquired title doctrine, they own the minerals. Plaintiffs responded, arguing, *inter alia,* their marketable record title in the minerals extinguished Defendant's interest. Finding that the facts in the matter were undisputed, the trial court ultimately ordered that title to the minerals be quieted in Plaintiffs.

## ANALYSIS

¶ 8 In his appeal, Defendant raises several errors with the trial court's application of the Act and questions its constitutionality. Before addressing those arguments, we must consider the history of the Act.

### The Marketable Record Title Act

¶ 9 As first enacted by the Oklahoma Legislature, the Marketable Record Title Act, 16 O.S.Supp.1963 §§ 71–81, provided that if a person had an unbroken chain of title for "40 years" with no defects in that chain and with no recorded instruments during that period which purported to divest that title, then that person would have "marketable record title" which would extinguish all interests and claims recorded prior to the effective date of the root of title. This version of the Act (the 40–year MRTA) became effective September 13, 1963. However, if the 40–year period expired "prior to two years after the effective date," the Legislature gave property owners until September 13, 1965, to file a notice that would prevent their interests from being extinguished by this new legislation. *See* 16 O.S.Supp.1963 § 81.

¶ 10 In 1970, the Legislature amended the 40–year MRTA by reducing the statutory period for an unbroken chain of title to 30 years (the 30–year MRTA) and by repealing § 81. Pursuant to 1970 Okla. Sess. Laws, c.

92, § 7, the 30–year MRTA became effective on July 1, 1972, "provided that if the thirty-year period specified in this act shall have expired *prior to its enactment,*" which date was March 27, 1970, "such thirty-year period shall be extended to July 1, 1972." (Emphasis added.)

¶ 11 Except for an amendment in 1995 to the 30–year MRTA, which is not applicable here,[5] the statutory language of both versions of the Act are identical. Therefore, we do not hereafter distinguish between the two, unless necessitated by the parties' appellate arguments.

### Issues Raised By Defendant

¶ 12 Defendant alleges error with the trial court's (1) failure to apply two of the Act's exceptions, (2) finding that "the time for applying the Act is at the conclusion of the time period of 40 years and not the time of filing action to quiet title," and (3) failure to apply the doctrine of "after-acquired title" to the party who received their interest first. We address these allegations in reverse order.

### *After–Acquired Title or Estoppel by Deed*

¶ 13 Because O'Donnell had conveyed fee simple title to the subject property to Donabed by warranty deed two years *prior* to O'Donnell's actual acquisition of the property from Van Tress, Defendant argues that O'Donnell's interest inured to his first grantee, Donabed, not his second grantees, the Skippers. As a result, Defendant contends that Plaintiffs are precluded from asserting any right or title in derogation of the first warranty deed, and their title prevails over Plaintiffs' title.

¶ 14 Defendant's arguments are based on "the doctrine of after-acquired title or estoppel by deed." This common-law doctrine, codified by the Legislature in 1901, has

---

4. On motion of Defendant and the Intervenors the trial court subsequently dismissed all claims relating to the additional tract of land. By order dated September 2, 2005, this Court approved the Intervenors' motion to dismiss their appeal of the trial court's quiet title judgment.

5. In the 1995 amendment, the Legislature mandated that stray instruments filed of record shall not create a root of title if certain conditions exist. *See* 16 O.S.2001 § 76(B) and (C).

never been amended. *See* 16 O.S.2001 § 17.[6] Under this equitable doctrine, a conveyance with warranty of title, as opposed to a quit-claim deed, from a "titleless" grantor vests in the grantee *equitable* title so that when the grantor thereafter acquires *legal* title, it will—by force of law—instantly pass to the grantee, by direct operation of law and without the intervention of any court. *United Oklahoma Bank v. Moss,* 1990 OK 50, 793 P.2d 1359; *Lucus v. Cowan,* 1960 OK 260, 357 P.2d 976.

¶ 15 Plaintiffs respond, arguing that Defendant's "after-acquired title" argument has no bearing on who owns the minerals *now* because the 30–year MRTA applies in this case to extinguish Defendant's title and gives superior title in the minerals to Plaintiffs. Defendant makes no argument and cites no authority to the contrary.

¶ 16 Plaintiffs' argument finds support in the plain and unambiguous language of § 73 of the 30–year MRTA, entitled "Claims prior to date of root title as null and void," which provides:

> Subject to matters stated in [§ 72 of the 30–year MRTA] *such marketable record title* shall be held by its owner and shall be taken by any person dealing with the land *free and clear of all interests, claims or charges whatsoever, the existence of which depends upon any act, transaction, event or omission that occurred **prior** to the effective date of the **root of title**.* All such interests, claims or charges, however denominated, *whether legal or equitable,* present or future, whether such interests, claims or charges are asserted by a person sui juris or under a disability, whether such person is within or without the state, whether such person is natural or corporate, or is private or governmental, are hereby declared to be null and void. (Emphasis added.)

¶ 17 Plaintiffs' argument for their "marketable record title" under the Act is based on their claim that (1) from 1922 until 1971, there is no evidence of any ownership or activity by or on behalf of Avedis Donabed, and (2) Plaintiffs' unbroken chain of title in excess of 30 years, the root of title *they claim* "began on September 16, 1926, when the deed from G.M. O'Donnell to R.W. Skipper and Estelle Skipper was filed [of record]. [Defendant] had until September 16, 1956, in which to preserve their claim by filing some notice that this thirty (30) year chain was broken."

¶ 18 As we interpret § 73 of the Act, although Avedis Donabed's equitable title from O'Donnell's 1922 warranty deed instantly converted to legal title when O'Donnell actually acquired his interest in the subject property in 1924, Defendant's interest in the minerals may be extinguished, *i.e.,* "null and void," (1) *if* its existence depends upon any act, transaction, event or omission that occurred *prior* to the effective date of Plaintiffs' root of title instrument ("pre-root interest"), in this case, Avedis Donabed's 1922 deed, and (2) *if* Plaintiffs have "marketable record title" as defined by the Act.

### Application of the Marketable Record Title Act

¶ 19 The 30–year MRTA was summarized by the Court in *Mobbs v. City of Lehigh,* 1982 OK 149, ¶ 8, 655 P.2d 547, 550, as follows:

> The Act is based upon the principle that when one has clear record title for at least thirty years, all interests recorded *prior* to this period should be cut off *unless preserved by filing a proper notice.* To effectuate this principle the Act focuses upon the concepts of "root of title" and "marketable record title." (Emphasis added; footnotes omitted.)

¶ 20 Section 71 of the Act, entitled "Marketable record title defined," provides:

> Any person having the legal capacity to own land in this state, who has an unbroken chain of title of record to any interest in land for thirty (30) years or more, shall be deemed to have a **marketable record title** to such interest as *defined in [ § ] 78*

---

**6.** Section 17, entitled "After-acquired title," provides that "All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed, as the case may be."

*of this title,* subject only to the matters stated in [ § ] 72 of this title. A person shall be deemed to have such an *unbroken chain of title* when the official public records disclose a conveyance or other title transaction, of record not less than thirty (30) years *at the time the marketability is to be determined,* which said conveyance or other title transaction purports to create such interest, either in

(a) the person claiming such interest, or

(b) some other person from whom, by one or more conveyances or other title transactions of record, such purported interest has become vested in the person claiming such interest;

with nothing appearing of record, in either case, purporting to divest such claimant of such purported interest. (Emphasis added.)

¶ 21 Various terms used in the 30–year MRTA are defined in 16 O.S.2001 § 78, including "Marketable record title," which under § 78(a) means "a title of record as indicated in [ § ] 71 of this title, *which operates to extinguish such interests and claims, existing prior to the effective date of the **root of title,*** as are stated in [ § ] 73 of this title." (Emphasis added.) Based thereon, the precise issue to be decided on appeal is whether Plaintiffs have "marketable record title" to the minerals sufficient to extinguish Defendant's mineral interest.

¶ 22 As § 78(a) clearly indicates, "marketable record title" (hereinafter, MRT) is dependent on an initial determination of the "root of title" and its "effective date." Both are defined under § 78(e) as follows:

that conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and *which was the most recent to be recorded as of a date thirty (30) years prior to the time when marketability is being determined. The effective date of the "root of title" is the date on which it is recorded.* (Emphasis added.)

¶ 23 The record supports the first part of Plaintiffs' argument, *i.e.,* after Donabed's

1922 warranty deed there is nothing else filed of record in Defendant's chain of title until the 1971 warranty deed. The second part of Plaintiffs' argument, however, is based on their interpretation of the Act that the "root of title" is the first document filed in a person's chain of title and "the proper method of determining *the thirty (30) years* is from the root of title *forward.*" (Emphasis added.)

¶ 24 Except for the 30–year period, the trial court apparently agreed with Plaintiffs' interpretation of the Act, finding that (1) "the time for applying the Act is at the conclusion of the time period of *40 years* and not the time of filing action to quiet title"; (2) Plaintiffs' *"source of title* is a Warranty Deed to W.R. Skipper and Estelle Skipper dated November 17, 1925"; (3) "[t]he minerals were severed by a deed from the Skipper(s) to R.F. Garland on December 4, 1926"; (4) "Plaintiffs have unbroken chain of title for a period of 49 years. (1922–1971)"; and that (5) "[f]rom 1971 until the present there has been no actual possession of minerals … to constitute adverse possession of the minerals, on behalf of [Defendant]." (Emphasis added.)

¶ 25 Based on those findings, the trial court concluded that the 1971 warranty deed in Defendant's chain "conveyed no minerals because such interest had been extinguished by the [40–year MRTA]." However, because the trial court's findings refer only to the deeds' execution dates, not the dates of their recording, we do not interpret the reference to the "source of title" as equivalent to § 78(e)'s "root of title." Without a correct identification of Plaintiffs' root of title, the trial court could *not* have properly applied the Act to determine whether they had MRT sufficient to extinguish Defendant's interest.

¶ 26 Statutory interpretation is a question of law. *Oklahoma Employment Security Commission v. Oklahoma Merit Protection Commission,* 1995 OK CIV APP 76, 900 P.2d 470. The primary goal of statutory construction is to ascertain legislative intent; such intent is ascertained from the whole act in light of the general purpose and objective. *City of Bethany v. Public Employees Relations Board of the State of Oklahoma,* 1995 OK 99, 904 P.2d 604. Pursuant to 16 O.S.

2001 § 80, the Act "shall be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title as described in [§ 71], subject only to such limitations as appear in [§ 72]." Considering the purpose declared in § 80 of the Act, the Court in *Mobbs*, 1982 OK 149, ¶ 13, 655 P.2d at 551, held:

> This is accomplished by eliminating those *ancient defects and stale claims* against the title to real property which are not properly preserved—*to the end that the period of record search may be limited to relatively recent instruments.* (Emphasis added.)

¶ 27 As we interpret the Act, Plaintiffs' identification of their root of title, upon which the trial court based its findings, ignores the plain and unambiguous language found in § 78(e)'s definition of "root of title"—"that conveyance or other title transaction ... purporting to create *the interest claimed by such person* " and "which was the *most recent to be recorded* as of a date thirty (30) years *prior* to the time *when marketability is being determined.*" (Emphasis added.) *If* Plaintiffs were claiming MRT to the fee simple title to the subject property, then the fee conveyance by the 1926 warranty deed might qualify as their root of title. However, they are claiming the entire mineral estate under the subject property, therefore the relevant conveyance for their root of title must be (1) the one "purporting to create" the mineral interest, *and* (2) "the *most recent to be recorded* as of a date thirty (30) years *prior* to the time *when marketability is being determined.*"

¶ 28 Defendant does not dispute Plaintiffs' *claimed* root of title, but instead argues, as he did below, that "the time that the marketability of title in the instant case is to be determined is now or was when [Plaintiffs] first filed its suit on September 10, 2001." He further argues that Plaintiffs "[do] not have an unbroken chain of title for thirty years preceding September 10, 2001," because two oil and gas leases executed by his father, Martin Tomassian as Trustee, and a deed conveying the subject property between two of his father's trusts, all filed in his chain of title between 1981–1999, purport to divest Plaintiffs of their mineral interest.

¶ 29 The Act does not specifically define either § 78(e)'s phrase—*when marketability is being determined*—or § 71's phrase—*at the time the marketability is to be determined.*[7] Although these phrases have not been specifically addressed by Oklahoma Courts, the *Mobbs* Court's application of the Act appears to support Defendant's interpretation that these phrases refer to the filing date of this quiet title action. In *Mobbs,* the plaintiff filed a quiet title action against the City over a 10-acre tract she had inherited from her father. After determining that a void tax deed could be a valid root of title under the Act, the *Mobbs* Court concluded the 1940 tax deed, although void, was the plaintiff's root of title in her chain of record title. Under the facts of *Mobbs,* the tax deed was clearly the *most recent to be recorded* as of a date thirty years *prior* to the filing of her 1971 quiet title action.[8] *See also Holland v. Hattaway,* 438 So.2d 456 (Fla.Dist.Ct.App.1983)(deciding, when identifying the root of title, that marketability was being determined as of the filing date of a quiet title action).

¶ 30 Applying Defendant's interpretation of § 78(e)'s phrase "as of a date thirty (30) years *prior* to the time *when marketability is being determined,*" since Plaintiffs filed this quiet title action on September 10, 2001, the root of title in their unbroken chain of record title to the minerals must be an instrument purporting to convey the entire mineral estate which was filed *prior to September 10, 1971.* Thus, to properly identify the root of title as defined by § 78(e), one must begin at that point and proceed *back* through the chain, not forward from the

---

7. This same phrase is also found in 16 O.S.2001 § 74(b), *infra.*

8. The *Mobbs* Court, in footnote 32, referred to the "30-year period in suit (1940–1970)" when explaining that "if the City had been in continu-

ous possession" for that period, "its continuous possession would serve as a valid notice under the Act and preserve the City's interest. 16 O.S. 1981 § 74(b)."

chain's source, as erroneously decided by the trial court.

■ ¶ 31 In Plaintiffs' chain of title, the mineral deed *most recent to be recorded prior to September 10, 1971* is the one from Liberty Royalties Company to Plaintiff Rocket Oil and Gas Company filed on March 2, 1949 (the 1949 mineral deed). Although this deed clearly meets the Act's definition of a "root of title" for Plaintiffs' chain, whether it is *the* "root of title" which establishes MRT to the minerals in Plaintiffs sufficient to extinguish Defendant's interest 30 years from that mineral deed's recording date, March of 1979, depends on whether anyone in Defendant's chain of title did anything under the Act to preserve his claim to the minerals.

¶ 32 Pursuant to 16 O.S.2001 § 74(a),

"Any person claiming an interest in land may preserve and keep effective such interest by filing for record during the thirty-year period *immediately following the effective date of the root of title of the person whose record title would otherwise be marketable,* **a notice in writing,** duly verified by oath, setting forth the nature of the claim."[9] (Emphasis added.)

It is undisputed that no § 74(a) notices were ever filed in Defendant's chain. However, *Allen v. Farmers Union Co–Operative Royalty Co.,* 1975 OK 102, 538 P.2d 204, held that when a "title transaction," as defined by § 78(f) of the Act, is recorded *subsequent to* the recording date of a competing chain's root of title and *prior to* the expiration of the 30–year period under the Act, it is equivalent to the filing of a § 74(a) notice. In *Allen,* there were three "title transactions" in the plaintiffs' chain of title filed subsequent to the defendant's alleged root of title and prior to expiration of its 30–year period that the Court determined were fatal to the defendant's claim of marketable record title to the minerals.

¶ 33 "Title transaction," as defined by § 78(f), means:

*any transaction affecting title* to any interest in land, including title by will or de-

scent, title by tax deed, mineral deed, lease or reservation, or by trustee's, referee's, guardian's, executor's, administrator's, master in chancery's, sheriff's or marshal's deed, or decree of any court, as well as *warranty deed,* quitclaim deed, or mortgage. (Emphasis added.)

As in *Allen,* the 1971 warranty deed in Defendant's chain of title is a "title transaction" filed subsequent to the 1949 mineral deed in Plaintiffs' chain of title and prior to expiration of the 30–year period (1949–1979) which acts as a § 74(a) notice to preserve Defendant's mineral interest, *i.e.,* it prevents Plaintiffs from establishing MRT *based on the 1949 mineral deed as a root of title* and from extinguishing Defendant's interest in the minerals in 1979.

¶ 34 The same can be said for the *next most recent to be recorded prior to September 10, 1971* mineral deed in Plaintiffs' chain of title, which was filed in 1946. The 1971 warranty deed *similarly* acts as a § 74(a) notice which preserves Defendant's interest and prevents Plaintiffs from establishing MRT in the minerals *based on a 30–year period after the recording of the 1946 deed* (1946–1976).

¶ 35 The *next most recent to be recorded prior to September 10, 1971* mineral deed in Plaintiffs' chain was filed on November 18, 1929 (the 1929 mineral deed). Under the same analysis as used above, there are *no* "title transactions" filed subsequent to its effective date and prior to the expiration of the 30–year period (1929–1959) by Defendant's predecessors-in-title which, under *Allen,* would be fatal to Plaintiffs' claim of MRT in the minerals.

¶ 36 At this point, the 1929 mineral deed would appear to qualify as Plaintiffs' root of title, however, because the 30–year period for that deed expired prior to the 30–year MRTA's enactment, we must determine whether Defendant receives the benefit of the Legislature's "statutory period," which provides that "[t]his act shall become effective ... on July 1, 1972, *provided that if the thirty-year period specified in this act shall*

---

9. *See* 16 O.S.2001 § 75 for the requirements for a "notice of claim" under § 74 "[t]o be effective and to be entitled to be recorded."

*have expired prior to its enactment, such period shall be extended to July 1, 1972."* (Emphasis added.) Applying this section, since the 30–year period for the 1929 mineral deed in Plaintiffs' chain of title expired prior to March 27, 1970, Defendant or his predecessors-in-title had until July 1, 1972 to file a notice or other title transaction to preserve the mineral interest. This they accomplished when Defendant's father filed the 1971 warranty deed. Therefore, Plaintiffs do not have MRT based on the 1929 mineral deed sufficient to extinguish Defendant's mineral interest, *at least* under the 30–year MRTA.

¶ 37 Relying on 16 O.S.2001 § 72(d), Plaintiffs argue that the filing of the 1971 warranty deed can not revive Donabed's mineral interest because that interest had already been extinguished by Donabed's failure to file a § 74(a) notice or some other "title transaction" to preserve his interest in the minerals during the *30 years* immediately after the effective date of their root of title. But for their erroneous conclusion that Donabed's mineral interest was extinguished by the *30–year* MRTA, we agree with Plaintiffs.

¶ 38 Section 72(d) provides, in relevant part:

Such marketable record title *shall be subject* to:

\* \* \*

(d) Any interest relating to *a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title of record is started;* provided, however, that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of [ § ] 73 of this title.

¶ 39 The only reasonable interpretation of § 72(d) is that the filing of the 1971 warranty deed in Defendant's chain could not revive Donabed's mineral interest *if* that interest had already been extinguished prior to 1971. Having previously concluded that the filing of the 1971 warranty deed preserved Defendant's mineral interest under the 30–year

MRTA, the question becomes whether the same interest had already been extinguished by application of the 40–year MRTA. This interpretation of § 72(d) finds support within the 1970 amendments, *see* 1970 Okla. Sess. Laws, c. 92, § 6, wherein the Legislature mandated that "[t]his act shall not be interpreted to revive any claim barred under the Oklahoma Marketable Record Act of 1963 . . . as originally enacted."

¶ 40 Applying the Legislature's "statutory period" under the 40–year MRTA to the 1929 mineral deed in Plaintiffs' chain of record title, Donabed would have had to file a § 74(a) notice or other "title transaction" to prevent his mineral interest from being extinguished by Plaintiffs' forty-year unbroken chain of title *subsequent to* November 19,- 1929, and *prior to* the expiration of that 40 year period, in November of 1969.[10] On that date, Donabed's pre-root interest in the minerals became extinguished by operation of the 40–year MRTA. Therefore, pursuant to § 72(d), the filing of the 1971 warranty deed in Defendant's chain of title, which was clearly filed *outside* the statutory period for the 40–year MRTA, could not revive Donabed's pre-root mineral interest.

¶ 41 Based on the record before us, the 1929 mineral deed is the "root of title" in Plaintiffs' chain of record title, 40 years after the filing of which Plaintiffs may rely for establishing MRT in the minerals under the subject property, *unless,* as § 71 and § 73 both provide and Defendant so argues, Plaintiffs' MRT *is subject* to other "interests or defects" excepted from application of the Act by § 72.

*Exceptions under § 72*

¶ 42 Defendant argues that "the case at bar falls directly within both exceptions to the Act," specifically § 72(b) and § 72(c), which provide:

(b) All interests preserved by the filing of *proper notice or by possession by the same owner* continuously for a period of thirty

---

10. Because the 40–year period for the 1929 mineral deed in Plaintiffs' chain (1929–1969) did not expire *prior to* September 13, 1963, the effective date of the 40–year MRTA, its 2–year grace period for filing notices, September 13, 1965, does not apply here.

(30) years or more, in accordance with [ § ] 74 of this title.

(c) The rights of any person arising from a period of *adverse possession or user,* which was in whole or in part subsequent to the effective date of the root of title. (Emphasis added.)

¶ 43 The interests excepted by § 72(b) are identical to the two separate methods of preventing one's interest from being extinguished under § 74 of the Act. The first is the filing of a "proper notice" under § 74(a), previously discussed herein and which the undisputed facts demonstrate was never filed in this case. Section 72(b)'s second method of preservation, which Defendant contends applies to prevent extinguishment of his mineral interest, is the same as that identified under 16 O.S.2001 § 74(b), which provides:

> *If* the *same record owner* of *any possessory interest in land* has been in possession of such land *continuously* for a period of thirty (30) years or more, *during which period no title transaction with respect to such interest* appears of record in his chain of title, and no notice has been filed by him or on his behalf as provided in [§ 74(a) ], and *such possession continues to the time when marketability is being determined,* such period of possession shall be deemed equivalent to the filing of the notice immediately preceding the termination of the 30–year period described in [§ 74(a) ]. (Emphasis added.)

¶ 44 Relying on § 72(b), Defendant first argues that the payment of taxes from 1971 through 2002, which the record demonstrates were *ad valorem* taxes,[11] constitutes "possession" for purposes of the Act. He also argues that "the record owners have been in possession of the land uninterrupted for well over thirty (30) years and that possession continued to the time marketability was determined. The Tomassians and/or their pre-

decessors in title have been in possession of the land for over eighty (80) years." In support thereof, he claims that he and his predecessors visited the property, sold timber off the land, and had the same appraised.

¶ 45 We need not decide the precise meaning of "possession" under § 74(b), because, even if we assume both arguments to be correct, both would nevertheless fail considering the express language of § 74(b) which *requires* that the *same record owner* must have been in *possession* of such land *continuously* for a period of thirty years or more and that *such possession* continues to the time *when marketability is being determined.* As previously decided, the time "when marketability is being determined" is September 10, 2001. It is undisputed in this record that Avedis Donabed died in 1966, and therefore could not have been in "continuous possession" until September 10, 2001. Similarly, Defendant's father, who received his warranty deed in 1971 from Donabed's sole heir, died in 1983, and therefore could not have been in "continuous possession" in September of 2001. Further, to the extent Defendant's argument suggests possession under § 74(b) may be "tacked," that argument is eliminated by the Legislature's reference to the "same record owner."

¶ 46 Relying on § 72(c), Defendant contends that the same payment of taxes from 1971 through 2002 constitutes "adverse possession" and therefore, Plaintiffs' MRT could not extinguish his interest. This argument must also fail because adverse possession of minerals may only be obtained by production or removal of the minerals from the land. *See Dearing v. State of Oklahoma ex rel. Commissioners of the Land Office,* 1991 OK 6, 808 P.2d 661. There is no evidence in this case that the oil, gas, or other minerals under the subject property were ever produced and/or mined by Defendant or his predecessors-in-title.[12]

---

11. Defendant claims they paid the taxes on the subject property from 1971 to 2002. The evidence in the record shows payment for ad valorem taxes for the years 1971–1974, 1976, 1988, 1996–1997, and 1999–2001.

12. Oklahoma has long recognized that when the mineral interest is severed, the fee is legally assessable as a unitary tract and the liability for *ad valorem* taxes always falls solely on the surface owner, until the minerals are produced, at which time a tax in lieu of *ad valorem* is levied upon the gross value of the production. *See Oklahoma Industries Authority v. Barnes,* 1988 OK 98, 769 P.2d 115.

636 ■

¶ 47 Defendant further argues, under the same § 72(c) "adverse possession" proposition, that "[his] chain of title is still alive," because the payment of taxes between 1971 and 2002 "constituted a conveyance or other title transaction within the meaning of the Act. 16 O.S. § 71" which he contends "is deemed a title transaction when placed of record in the County Treasurer's Office as the taxpaying 'owner' of the land." As authority therefore, he relies on § 78(f)'s definition of title transaction as "any transaction affecting title to any interest in land," and § 78(b), which provides, " '[r]ecords' includes probate and other official public records, as well as records in the county clerk's office."

¶ 48 However, even if Defendant's position that the payment of *ad valorem* taxes constitutes a "title transaction" is correct, which we do not decide, the first payment in 1971, just like the filing of the 1971 warranty deed, would also have been *outside* the statutory period under the 40–year MRTA and therefore, would not have preserved Donabed's interest. There being no "interest or defects" excepted by § 72, we conclude that Plaintiffs' MRT to the minerals, based on the 1929 mineral deed as their root of title, extinguished Defendant's title to the same in 1969, pursuant to the 40–year MRTA, and affirm the result ultimately reached by the trial court. As a result, Defendant's "after-acquired title" argument must fail.

*Constitutional Arguments*

¶ 49 Defendant argues that application of the Act in this case (1) constitutes taking of private property for "public use" without just compensation and for "private use" with or without compensation, (2) impairs the obligation of their contracts, and (3) denies him procedural due process, and therefore the Act violates either the U.S. Constitution or the Oklahoma Constitution, and in some circumstances, both. He correctly points out that the constitutionality of the Act has never been addressed by the Oklahoma Supreme Court and acknowledges that "the only guidance that the law provides, as it relates to the Act, is by analogy" to *Texaco, Inc. v. Short,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).

¶ 50 In *Texaco,* the U.S. Supreme Court opined that the State of Indiana had the power to enact, and did not do so arbitrarily, the Indiana Dormant Mineral Interest Act, more commonly known as the Mineral Lapse Act. The Mineral Lapse Act provides that a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner, unless the mineral owner, prior to the expiration of the 20–year period or within a 2–year grace period after the effective date of the Act (September 2, 1971), files a statement of claim in the local county recorder's office. In this regard, the Court concluded that each of the actions required by the State to avoid abandonment of a mineral estate furthers legitimate state goals, *i.e.,* to develop those interests and to identify the owners for tax collection purposes. Based thereon, the Court held, *inter alia,* that the Mineral Lapse Act does not take property without just compensation in violation of the Fourteenth Amendment, does not impair the obligation of contracts, and does not extinguish property rights without adequate notice in violation of due process rights.

¶ 51 Defendant argues that application of the Act denies them procedural due process in violation of U.S. Const. amend. XIV, § 1, and Okla. Const. art. II, § 7, claiming that to receive full protection, the Act should require notice that their interest is going to be extinguished. They further argue that the State's interest in simplifying and facilitating title transactions and having clear title to property does not outweigh their interest in existing property rights.

¶ 52 Like the appellants in *Texaco,* Defendant does not challenge the sufficiency of the notice given to him in this quiet title suit, arguing only that the State of Oklahoma should have required some form of notification by a junior grantee to a senior grantee that the latter's interest is about to be extinguished. Considering notice by the State and notice by the surface owner as two different "notice" issues, the Court in *Texaco* held, as to first issue, that "it is well established that persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or

disposition of such property" and "the 2–year grace period included in the Indiana statute forecloses any argument that the statute is invalid because mineral owners may not have had an opportunity to become familiar with its terms." 454 U.S. at 532, 102 S.Ct. at 793.

¶ 53 Concerning the pre-lapse notice by surface owners, the Court in *Texaco* held, "[their] claim has no greater force than a claim that a self-executing statute of limitations is unconstitutional. The Due Process Clause does not require a defendant to notify a potential plaintiff that a statute of limitations is about to run." 454 U.S. at 536, 102 S.Ct. at 796. Based thereon, we find Defendant's due process argument similarly unpersuasive.

¶ 54 Arguing that application of the Act constitutes a taking of private property *for public use* without just compensation in violation of U.S. Const. amend. XIV, § 1, and Okla. Const. art. II, § 24, Defendant admits in his brief that "any attempt to apply the Act to the instant case would *not be for the public use*, but for the benefit of [Plaintiffs] and would be for private use." Although such an admission that there is no "public use" would generally eliminate any need to address this specific taking argument, Defendant, in a separate section in his Brief in chief, claims that the Act violates the Oklahoma Constitution, both art. II, § 23 and § 24, the former of which prohibits the taking of private property *for private use*, with or without compensation, unless by consent of the owner. Relying on Eugene Kuntz's analysis of the Legislature's Statutory Pugh Clause in *Statutory Well Spacing and Drilling Units*, 41 Okla. L.Rev. 344 (1978), *i.e.*, retroactive application to existing oil and gas leases would impair vested rights, Defendant contends that "the Act operates to deprive [him], against his consent, of a vested estate and to vest it in [Plaintiffs] for their private use."

¶ 55 Unlike the Legislature's enactment of the Statutory Pugh Clause, which the Court in *Wickham v. Gulf Oil Corp.*, 1981 OK 8, 623 P.2d 613, held would not be applied retroactively, the Act provides a property owner methods for preserving one's interest. Defendant's argument further fails to consid-

er not only this State's legitimate goals, previously discussed herein, but also the holding in *Texaco* that "[i]t is the *owner's failure* to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." 454 U.S. at 530, 102 S.Ct. at 793. Nor do we think the involvement of vested rights would make a difference, considering the Act's application to such was acknowledged by the *Mobbs* Court, when distinguishing the 30–year MRTA from a statute of limitations, 1982 OK 149, ¶ 12, 655 P.2d at 551:

> Marketable title legislation, on the other hand, has for its target the right itself. It operates to extinguish any claim or interest, *vested* or contingent, present or future, unless the claimant preserves his claim by filing a notice within a thirty-year period. If a notice is not filed, the claim is lost. Interests are thus extinguished *because claimants failed to record,* not because they failed to sue. (Emphasis added.)

¶ 56 Defendant further argues that application of the Act in this case impairs the obligation of the contracts "between [him] and his predecessors in title," as prohibited by the U.S. Const. art. I, § 10, and Okla. Const. art. II, § 15, claiming "[their] contract existed at the time the Act was passed and at the passing of the Act the contract was made void and thus is unconstitutional." In making this argument, we assume Defendant is attempting to distinguish the two deeds in his chain of title from the oil and gas leases in *Texaco* that were executed after the statutory lapse of their mineral rights, which the Court determined, "the statute cannot be said to impair a contract that did not exist at the time of its enactment." 454 U.S. at 530, 102 S.Ct. at 793.

¶ 57 To the extent Defendant is arguing that a deed is a contract between parties, we agree. However, it is a contract that creates rights in and to property, or "property rights," which the Court acknowledged in *Texaco*, are created and governed by state law, and based thereon, held that, "We have no doubt that, just as a State may create a property interest that is entitled to constitutional protection, the State has the power to condition the permanent retention of that

property right on the performance of reasonable conditions that indicate a present intention to retain the interest." 454 U.S. at 526, 102 S.Ct. at 790.

¶ 58 Similar to the Mineral Lapse Act, the Act at issue here required Donabed, after the filing of the mineral deeds in Plaintiffs' chain of title, to perform reasonable conditions to demonstrate his intention to retain his minerals, *i.e.*, either file a § 74(a) notice or other "title transaction" or be in "continuous possession" as defined by § 74(b). This he did not do, and as previously decided, the 1971 warranty deed was filed too late to preserve Donabed's pre-root interest. In deciding that the Act does not unconstitutionally impair the obligation of contracts, we agree with the Court in *Texaco* that "such a minimal burden on contractual obligations is not beyond the scope of permissible state action." 454 U.S. at 526, 102 S.Ct. at 790.

## CONCLUSION

¶ 59 Based on the record before us, the trial court's judgment, although based on different reasoning and/or erroneous application of the Act, reaches the correct result and therefore must be affirmed. *Benham v. Keller*, 1983 OK 68, 673 P.2d 152.

AFFIRMED.

MITCHELL, J. and BELL, J., concur.